DOLAN, et al, Respondents, v. SMITH, et al, Appellants.

(228 N. W. 377.)

(File No. 5810.   Opinion filed December 31, 1929.)

*Muller & Conway,* of Sioux Falls, for Appellants.

*Waggoner & Stordahl* and *M. G. Luddy,* all of Sioux Falls, for Respondents.

BROWN, J.   Plaintiffs in this action are sisters, nieces of Nancy Smith, who in her lifetime was the wife of John J. Smith,

an uncle of defendants. When Agnes was about 12 and Anna about 4 years of age their mother died, leaving in the family her husband, his aged mother, and six small children, all girls. The father was in poor circumstances financially, and plaintiffs were taken into the home of John J. Smith and wife, who lived on a farm in Minnehaha county and had no children of their own. The Smiths remained on the farm for about 9 years after plaintiffs came into the family and then moved to Sioux Falls. Agnes remained a member of the family until she was about 26 years of age, when she got married, and since then has had a home of her own. Anna remained a member of the Smith family until shortly before the death of Smith, which occurred on April 21, 1923. She was then about 27 years of age. Nancy Smith died in the fall of 1921. At the time of his death, John J. Smith owned the farm and also some real estate in the city of Sioux Falls; his entire property being valued at from $20,000 to $30,000. Plaintiffs claim that during his lifetime Smith orally agreed to give them all of his property in consideration of their maintaining towards him and his wife the relationship of children, and caring for them as children should provide and care for parents. Smith did not convey to either of plaintiffs any part of his property, and made no will. His property therefore passed by the law of succession, and would be inherited by defendants, two of whom are brothers and one a sister of John J. Smith, unless plaintiffs established their right thereto under the alleged oral contract or agreement referred to.

Phillip Smith having been appointed administrator of the estate of John J. Smith, plaintiffs presented and filed with him a claim against the estate for $30,000 damages for John J. Smith's breach of his oral agreement to convey to them all of his property, and, the claim having been rejected by the administrator and by the county court, plaintiffs brought this action demanding judgment that they be decreed the owners of all the property left by the deceased, or alternatively that they recover a money judgment against the administrator for $30,000, with interest from April 21, 1923, the date of the death of John J. Smith.

A jury was impaneled for the trial of the case, but at the close of all the evidence, the court, after denying a motion of defendants for a directed verdict in their favor, on its own motion and against the objections of defendants, discharged the jury, and made find-

ings of fact and conclusions of law in favor of plaintiffs, upon which judgment was entered adjudging plaintiffs are the owners of all of the estate of John J. Smith, deceased, and directing that defendants execute conveyances of such property to plaintiffs, and, in the event of their failure to do so, the clerk of the court is empowered and directed to execute the proper conveyance, and, from this judgment and an order denying a new trial, defendants appeal.

One of the findings of the court, which is supported by the evidence, is to the effect that while on the farm plaintiffs worked diligently at all sorts of farm work as well as housework.

But the decision of the trial court cannot be upheld unless there was a contract between Smith and plaintiffs that he would give or convey to them his property in consideration of their becoming members of his family and caring for him and his wife as children usually do for parents. It therefore becomes necessary to ascertain what evidence there is to support any such contract. The whole evidence on that subject is, in substance, this: Chance Finch testified that at one time out in the field 15 or 16 years before the trial John Smith said that, if the girls would stay with him as long as he farmed, they could have *the home place*. This evidently related only to the farm. Emma Darst, the wife of a tenant who lived on the farm after the Smiths moved to Sioux Falls, testified that in the latter part of 1922 John Smith in conversation with her said he did not expect Anna to have to work for a living, that he always had taken care of her and he always expected to, and he expected *her* to have what he left when he died. This conversation indicates that he then had no intention of leaving anything to Agnes Dolan, but of giving it all to Anna. Ed Johnson testified that about 15 years ago Smith in a talk with him in which the girls were mentioned said something the meaning of which was "it was the same as his children, and he would leave them what they had," and that at another time he said that he wanted the girls to stay with him and do as they had done, but at that time did not say anything about the property, and Agnes said she would stay with them and do the best she could for them or something similar to that, and that when Agnes was about to marry Schafer the meaning of what Smith said to him was "that if she married against his wishes he would have to break his promise that he had given the girls of this land or home or property or whatever you would call

it." Helen Frye testified that she had a talk with Smith, but could not tell when, not even approximately the year, in which he said: "We raised the two girls and after our days, what we have belongs to them. Ralph Darst testified that Smith said to him that he intended for Anna to have the property. W. H. Dunlap testified that at different times between 1903 and 1910 Smith had said to him that when he was through with his property he intended the girls should have it. Adelaide Steele testified that on an occasion, which seems to have been several years after Agnes was married, Smith said to her: "We have two little girls who live with us, and when we get through with this world's goods, if there is anything left after the bills are paid, we intend that the girls should have it." On the other hand, John McGrain, a cousin of plaintiffs and who was not related to the defendants, testified to matters indicating that Smith had felt that the girls had neglected him after his wife died, and said that in case anything happened to him he wanted Phillip to sell the property and divide *his* share with his brothers and sister, and Nancy's share with her people; that he seemed to be under the impression that Nancy had earned a share of his property, and he was willing that her relatives should have that. Dr. M. H. Egan testified that he had been the family doctor of John and Nancy Smith for about 15 years and had attended John J. Smith when he was sick in 1922 and had suggested that he make a will disposing of his property and that Smith replied that it did not make any difference, he did not think he needed a will, what property he had would go to his sister and brothers anyhow. There is no evidence, that any of Smith's alleged statements of intention to give his property to plaintiffs were made to plaintiffs, or either of them, or that any of such statements were made in the presence or hearing of either plaintiff.

It is plain that the evidence falls far short of showing any agreement made by John J. Smith with the plaintiffs, or with either of them to give them his property or any part of it. The most that the evidence tends to show is that at one time he intended to give Anna all that he might have, and that at still another time he expressed the intention of giving the girls what he had when he was through, but there is nothing in the entire evidence that shows he ever made any agreement with plaintiffs or either of them to give them any part of his property, and, in the absence of

an agreement to that effect, courts have no authority to award his estate to them. Nor can the alternative demand of plaintiffs for a money judgment be sustained. Smith stood in loco parentis to plaintiffs, and they cannot recover from his estate for services rendered either before or after majority, in the absence of an agreement for compensation. Rev. Code 1919, § 195; 29 Cyc. 1670 et seq.

The motion of defendants for a directed verdict should have been granted. The judgment and order appealed from are reversed, and the cause remanded, with direction to the trial court to dismiss the action on the merits.

SHERWOOD, P. J., and POLLEY and CAMPBELL, JJ., concur.

BURCH, J., dissents.